USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   2/19/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

MARCO POLO CAPITAL MARKETS LLC,

Debtor.

**ORDER**

MARCO POLO CAPITAL MARKETS LLC,
Debtor,

Appellant,

-against-

MARCO POLO CAPITAL MARKETS LATIN
AMERICA, S.A. and AMERICAS TRADING
GROUP,

Appellees.

20 Civ. 162 (AT)

MARCO POLO CAPITAL MARKETS LLC,
Debtor and MARCO POLO NETWORK INC.,

Appellants,

-against-

ATG AMERICAS TRADING GROUP S.A.
(formerly known as MARCO POLO LATIN
AMERICA S.A.), FERNANDO COHEN,
ARTHUR MACHADO, VICTRIX PARTNERS
S.A., POSTALIS INSTITUTO DE
SEGURIDADE SOCIAL DOS CORREIOIS E
TELEGRAFOS, ETB FUNDO DE
INVESTMENTO E PARTICIPACOES (CVM ID
NO. 379-4), BNY MELLON SERVICOS
FINANCEIROS DISTRIBUIDORA DE
TITULOS E VALORES MOBILIARIOS S.A.,
THE BANK OF NEW YORK MELLON and
ZECA OLIVEIRA,

Appellees.

20 Civ. 167 (AT)

ANALISA TORRES, District Judge:

Before the Court are two consolidated appeals, the first brought by Marco Polo Capital Markets LLC ("MPCM"), and the second by MPCM and Marco Polo Network Inc. (collectively, "Appellants").  Appellants appeal from the dismissal for failure to prosecute of two adversary proceedings in United States Bankruptcy Court for the Southern District of New York on December 18, 2019, by the Honorable Shelley C. Chapman.  ECF No. 1[1]; *Marco Polo Capital Markets LLC v. Marco Polo Capital Markets Latin America, S.A. & Americas Trading Group*, No. 20 Civ. 162 (S.D.N.Y.), ECF No. 1;  *In re Marco Polo Capital Markets LLC*, 12 Br. 14870 (Bankr. S.D.N.Y.), 12/18/2019 Docket Entries; Apps. at 257–59, 498–499, ECF Nos. 12-1–12-2.

For the reasons stated below, the December 18, 2019 orders are AFFIRMED.

## BACKGROUND

MPCM, which owned and operated an electronic securities trading platform, filed for bankruptcy under Chapter 11 of the Bankruptcy Code on December 13, 2012.  App. at 9, 126.  In 2015, MPCM filed a breach of contract action against Appellee ATG Americas Trading Group, S.A. ("ATG"), among others, (the "2015 Action"), and in 2017, MPCM, along with Marco Polo Network Inc., its parent company, filed a fraud action against Appellees ATG, Fernando Cohen, and the Bank of New York Mellon ("Bank Mellon"), as well as other residents of Brazil (the "2017 Action," or, with the 2015 Action, the "Adversary Proceedings").  *Id*. at 132–36, 290. Because MPCM did not have the financial resources to prosecute the Adversary Proceedings, Appellants had planned to borrow funds from Phoenix, LLC.  *Id*. at 14, 76.

In both Adversary Proceedings, from the date of filing until March 2019, the only notable action was Appellants' requesting and, with the consent of Appellees, receiving repeated

---

[1] Unless otherwise indicated, all citations to the docket refer to the docket in case number 20 Civ. 167.

extensions of the time to serve the Brazilian defendants.  *See id*. at 278–81; *Marco Polo Capital Mkts., LLC v. Marco Polo Capital Markets Latin America, S.A.*, 15 Br. 1094 (Bankr. S.D.N.Y.).

On March 14, 2019, Judge Chapman called the first status conference in the Adversary Proceedings (the "March Conference"), after the latest extension of time to serve—which she had informed Appellants would be the final extension—ran out.  App. at 82–83.  Appellants explained that the delay in moving the cases forward was due in part to Phoenix, LLC's inability to provide funding because of the death of one of its funders.  *Id*. at 77.  Appellants stated, however, that "alternatives [were] being explored for the financing."  *Id.* at 78.

Although Judge Chapman expressed sympathy for Appellants' difficulties, she denied their request for 90 days to arrange funding, opting to permit 60 days instead.  *Id.* at 79–80.  She would not, she informed Appellants, continue to give "endless extensions" or "infinite more time,"  but because this was the first time everyone had engaged together, she could not "just kind of drop the curtain now.  There has to be a process."  *Id.* at 79–80, 83.  Therefore, she ordered Appellants to return in 60 days, and made "very clear" that

> when you come back in 60 days, you need to come back with a funding commitment in hand . . . .  Otherwise, I will issue an order to show cause why these cases should not be dismissed for lack of prosecution.  So I just want you to make that clear to [] your client and those who have an interest that in 60 days, there has to be an actionable commitment letter, funding commitment, or some other document that evidences a bond and commitment to fund and a pathway for it. . . .  [I]t cannot be 'I got a guy, we're almost there,' or anything of that nature.  Firm, actionable commitment.

(the "March Order").  *Id.* at 83–84.

Notwithstanding Judge Chapman's warning, 60 days later, at a conference on May 13, 2019 (the "May Conference"), Appellants advised the judge that they had not secured litigation funding.  *Id.* at 95.  Appellants' new counsel, who had been paid a retainer, stated that he "believe[d] that the client will come up with funds."  *Id.*

3

Judge Chapman concluded that this was "exactly what [she] said don't do"—come back with a non-firm funding commitment. *Id.* at 96, 103, 109.  She indicated that "somebody's got to make a motion," presumably for failure to prosecute. *Id.* at 96.  However, because new counsel had just appeared, Judge Chapman opted to "give [Appellants] a little leeway." *Id.* at 109. Though "very close" to granting dismissal, Judge Chapman "tr[ied] to balance [her] obligations moving things on for those who are . . . named as [d]efendants with [her] desire that every effort be made [to] recover . . . monies on behalf of the creditors," and therefore, if Appellants had "a good claim against these [d]efendants, it's [their] right to assert that and [she would] hear it on a motion to dismiss." *Id.* at 110–11.

The next conference was on July 16, 2019 (the "July Conference").  There, the parties reported that Appellants had filed their amended complaint in the 2017 Action, as ordered at the May Conference, and that in the 2015 Action Appellants were awaiting discovery. *Id.* at 176. Appellants also informed the court that they had requested letters rogatory in order to serve the Brazilian defendants; Judge Chapman, though noting skeptically that "it's 2019, and now we're first" discussing the letters rogatory, decided she could not "hold [current counsel] responsible" for having "inherited" previous counsel's failure to request the letters rogatory, and so "put off . . . to one side" the issue. *Id.* at 179–80.  However, she ordered the parties to set a "very aggressive" discovery schedule in the 2015 Action, and the parties stipulated to a motion to dismiss schedule in the 2017 Action. *Id.* at 178, 282; *Marco Polo Capital Markets LLC v. ATG Americas Trading Group S.A.*, No. 17 Br. 1051 (Bankr. S.D.N.Y.), ECF No. 81.

On September 20, 2019, Appellees filed their motions to dismiss the 2017 Action.  App. at 282.  On October 11, 2019, Appellants' counsel moved to withdraw, citing Appellants' failure to pay since April 2019. *Id.* at 190–91.  Counsel also requested an interim stay of the Adversary

4

Proceedings pending the hearing and decision on the motion to withdraw, and an additional 30 days to allow Appellants to retain new counsel. *Id.* at 191. Appellees opposed this request for a stay. *Id.* at 196.

On November 12, 2019, at the hearing on the motion to withdraw (the "November Hearing"), Judge Chapman lamented that she was a "broken record in this case," as "nothing has happened" and she "[didn't] understand what's going to change," so she was "very inclined to put an end to this." *Id.* at 241. After four years without the case having "gotten traction" in finding litigation financing, she noted, it was "extremely unlikely that it[ was] going to get any traction." *Id.* Although Appellants—through their principal, Vinode Ramgopal—reported that he had "talked to a number of firms [and] litigation funders who would like to finance this," Judge Chapman remained skeptical. *Id*. at 242. She addressed the history of the case: "in March, [she] said come back in 60 days with a funding commitment . . . or [she] would issue an order to show cause why the cases shouldn't be dismissed for failure to prosecute. So here we are . . . all those months later." *Id.* at 242–43. Judge Chapman informed Appellants that she was "greatly sympathetic" to his desire to "recoup some of what [he] lost." *Id.* at 243. However, "the facts are stale." *Id.* at 244. In addition, although she understood Appellants' "tremendous loss," "there [were] folks on the other side who are paying lawyers to keep having to respond . . . . There's unfairness on that side, too, and [she had] to give them their due." *Id.*

Judge Chapman stated, "we have to be done." *Id*. at 250. She granted the 30-day stay, but ordered,

> by the end of the 30 days, there has to be a new counsel with evidence of
> sufficient funding and a commitment to represent you in these adversary
> proceedings through conclusion, be that whatever it looks like, and no later than
> 21 days after that 30th day there's an opposition to the motion to dismiss. If the
> first of those things doesn't happen, everything's dismissed.

(the "November Order"). *Id.* at 250. She reiterated, "to be clear . . . if there's no appearance of counsel with sufficient documentation re: funding and the nature of the engagement, by December 12th, I'm going to dismiss both adversary proceedings. If I get what I deem to be satisfactory, then the subsequent deadline [to file opposition papers to the motions to dismiss] kicks in." *Id.* at 252–53. All parties present, including Appellants' principal, indicated that they understood this deadline. *Id.* In order to make sure there was a "a clear path when [Judge Chapman was] staring down the possibility of dismissing these cases," she ordered the parties to draft a written order reflecting her oral order, to create a "crystal clear" record of the deadlines. *Id.* at 254–55.

> On December 5, 2019, that written order was entered, stating in relevant part that
>
> by December 12, 2019, Plaintiffs must have new counsel file a notice of appearance, along with sufficient evidence demonstrating that Plaintiffs have obtained funding sufficient to fund new counsel's representation of Plaintiffs through the conclusion of this proceeding (the "New Counsel Filing Requirement"); . . . if Plaintiffs do not satisfy the New Counsel Filing Requirement, the Amended Complaint . . . shall be dismissed with prejudice without further court order.

(the "December Order"). *Id.* at 257–58.

On December 12, 2019, Appellants filed a letter on the docket,[2] stating that though they understood what the December Order required, they would not meet that requirement. *Id.* at 262. Appellants claimed, however, that they were "merely days away from agreeing on a potential funding transaction with a funder and a new relationship with an AmLaw 200 law firm," (the funder and firm, together, the "Litigation Financers"), who needed additional time to vet Appellants. *Id.* Appellants requested a stay of the December Order while that vetting took place (the "Stay Request"), which might take 45 days. *Id.* at 261. The next day, all Appellees sent in

---

[2] Their previous counsel placed the letter on the docket, though Appellants were unrepresented. App. at 260.

letters opposing the Stay Request, and Appellants filed another letter in response.  *Id.* at 263–270.

Judge Chapman did not respond directly to the Stay Request, and on December 18, 2019, the Adversary Proceedings were closed.  *Id.* at 2, 289.

On January 2, 2020, Appellants filed a notice of appeal, through their current attorney of record, Evan Glassman of Steptoe & Johnson LLP.  *Id.*; Appellant Mem., ECF No. 12.

## DISCUSSION

I.      Jurisdiction and Legal Standard

When reviewing judgments rendered by bankruptcy courts, district courts act as appellate courts.  *See In re Sanshoe Worldwide Corp*., 993 F.2d 300, 305 (2d Cir. 1993); 28 U.S.C. § 158(a).  Findings of fact are reviewed for clear error, and conclusions of law are reviewed *de novo*.  *In re Bennett Funding Grp., Inc*., 146 F.3d 136, 138 (2d Cir. 1998).  However, review of the bankruptcy court's discretionary control over the management of its own docket has an "extremely narrow" scope.  *In re Crysen/Montenay Energy Co*., 166 B.R. 546, 549 (S.D.N.Y. 1994).

An appellate court reviews a trial court's order of dismissal for failure to prosecute for "an abuse of discretion in light of the record as a whole."  *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014).  Given that dismissal with prejudice is "a harsh remedy," the Second Circuit requires certain procedural safeguards that cabin the trial court's discretion.  *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (citation omitted).  Therefore, the reviewing court considers the trial court's dismissal with reference to five factors:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the

plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Baptiste*, 768 F.3d at 216 (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir.1996)).  No single factor is dispositive.  *Id.*  Evaluation of these criteria ensures the finding of "willfulness, bad faith, or reasonably serious fault" required to dismiss.  *Id.* at 217.

The trial court is not required to make "exhaustive factual findings" on each factor, or even to expressly discuss each factor on the record.  *Id.*; *Hunter v. New York State Dep't of Corr. Servs*., 515 F. App'x 40, 42 (2d Cir. 2013).  However, just as the Second Circuit expects a sentencing court to "'explain enough about a sentence for a reviewing court both to understand it and to assure itself that the judge considered the relevant law,' 'a decision to dismiss stands a better chance on appeal if the appellate court has the benefit of the district court's reasoning.'" *Baptiste*, 768 F.3d at 217 (alterations and citations omitted) (quoting *Lucas*, 84 F.3d at 535). Where a trial court does not explicitly consider each of the *Baptiste* factors, the appellate court reviews the factors itself.  *Id.*

II.   Analysis

A.   Duration of Noncompliance

The duration of noncompliance factor encompasses two inquiries: "(1) whether the failures to prosecute were those of the plaintiff, and (2) whether these failures were of significant duration."  *U.S. ex rel. Drake v. Norden Sys., Inc*., 375 F.3d 248, 255 (2d Cir. 2004).  Here, the failures to prosecute were Appellants', not the court or Appellees'.[3]  *See id.* at 258; *Jefferson v. Webber*, 777 F. App'x 11, 14–15 (2d Cir. 2019).

_____

[3] The parties dispute whether the Court should afford Appellants the sort of "leniency" afforded *pro se* plaintiffs, as they were not represented by counsel after the December Order.  *LeSane*, 239 F.3d at 209; App. at 257.  *Pro se* plaintiffs are generally afforded a special solicitude because "a *pro se* litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if he is not afforded some degree of protection."  *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  However, a district court should

The parties debate when Appellants' non-compliance began: whether on December 12, 2019, Appellant Mem. at 16–17, the beginning of the Adversary Proceedings, Cohen Mem. at 19, ECF No. 16, or the March Conference,  Bank Mellon Mem. at 22–23, ECF No. 14; ATG Mem. at 32–33, ECF No. 17.

The Court concludes that Appellants' non-compliance began at the May Conference, when Appellants failed to comply with the March Order.  At the March Conference, Judge Chapman made clear the risk facing Appellants should they fail to comply with the March Order, and that she would not grant infinite extensions.  App. at 79.  At the May Conference, Judge Chapman noted that she did not believe Appellants had complied with the March Order, but she was granting them some leeway, effectively extending the deadline.  *Id.* at 109.  Finally, at the November Hearing, Judge Chapman stated that she had been a "broken record" since March, and that "all these months later" Appellants had failed to comply with her March Order.  App. at 243–44.  Moreover, the November Order requiring new counsel "with evidence of sufficient funding," is, in effect, a reiteration of the March Order requiring a firm commitment of funding that would see the litigation through to the end.  *Id.* at 250.  Appellants never fully complied with that order, eventually prompting the dismissals.

---

exercise its discretion to determine the level of solicitude to grant a *pro se* plaintiff, based on "the specific procedural context and relevant characteristics of the particular litigant."  *Id.* at 101–03 (explaining civil rights plaintiffs and prison inmates receive a high degree of solicitude, whereas a litigant who is "experienced in litigation and familiar with the procedural setting presented" may be granted less, and an attorney representing themself receives none at all).  Here, Appellants' principal, an ex-partner at Lehman Brothers, is a far cry from the majority of *pro se* plaintiffs, such as incarcerated prisoners requiring an *in forma pauperis* certificate to proceed.  App. at 242; Jonathan D. Rosenbloom, *Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York*, 30 Fordham Urb. L.J. 305, 324 (2002).  However, his status as a sophisticated businessman does not mean that he is particularly experienced at litigation.  Therefore, though the Court will not afford Appellants the highest degree of leniency afforded to an incarcerated plaintiff, it will remain mindful that Appellants' final filings were not prepared by an attorney.

Therefore, Appellants failed to comply for seven months, which "falls comfortably within the time frame[]" of five to ten months courts in this circuit have "found sufficient" to dismiss, particularly in light of the fact that the Adversary Proceedings had sat mostly dormant for years preceding the March Conference. *St. Prix v. Sirus XM Satellite Radio,* No. 11 Civ. 1506, 2014 WL 405812, at *3 (S.D.N.Y. Jan. 29, 2014); *Ruzsa v. Rubenstein & Sendy Attys at Law*, 520 F.3d 176, 177 (2d Cir. 2008).  Moreover, Appellants did not promise that they would comply; even the Stay Request did not guarantee funding at the end of the stay.  App. at 261; *cf. Baptiste,* 768 F.3d at 217–18 (noting this factor was alleviated where there was no further risk of noncompliance).

Appellants contend that *Spencer v. Doe*, 139 F.3d 107 (2d Cir. 1998), requires the Court to find that the delay should be deemed to have commenced on December 12, 2019.  Appellant Mem. at 15–17.  *Spencer*, however, is distinguishable.  There, the plaintiff—a *pro se* inmate— was ordered to provide current addresses for individual defendants within 20 days, or the case would be dismissed.  *Id.* at 110.  In a letter filed on the docket the day the deadline expired, but dated two weeks earlier, plaintiff requested the court's assistance to compel certain agencies to produce information regarding those defendants, as he had "neither the means nor [the] ability" to comply with the court's order.  *Id.*  Two weeks after that, the district court judge denied the motion for assistance and dismissed the proceeding for failure to prosecute.  *Id.*  The Second Circuit reversed, reasoning that the plaintiff's request for assistance was filed before the deadline set by the district court judge, the fact that it was dated two weeks prior to the deadline demonstrated a "conscientious effort" to comply, plaintiff was "justified in believing" that his motion for assistance satisfied the order, and, given that the plaintiff was young and proceeding

*pro se* from a correctional facility, it was "unduly harsh to charge him with failure to comply with the . . . order." *Id.* at 113 (internal quotation marks omitted).

Here, Appellants filed the Stay Request on December 12, 2019, the day the deadline expired, despite the fact that the Litigation Financers had been considering Appellants' request for financing for 25 days. App. at 261. Appellants had seven months to comply with Judge Chapman's March Order; Spencer had 20 days. Moreover, although Appellants were not represented after the December Order, they were also not young, incarcerated individuals requiring particular leniency. And finally, Spencer reasonably believed he had complied with the order; Appellants' letter informed Judge Chapman they had not. Therefore, *Spencer* does not foreclose a finding that this factor weighs in favor of dismissal.

However, this is also not a case in which Appellants had completely disappeared. Appellants filed an amended complaint in the 2017 Action. App. at 281. In addition, as the Litigation Financers had been vetting Appellants for 25 days as of December 12, 2019, the vetting had started merely five days after the November Order. Where a plaintiff is attempting to comply, it can undercut a long duration of noncompliance. *Hevner v. Vill. E. Towers, Inc.*, 293 F. App'x 56, 58 (2d Cir. 2008); *Town Plaza of Poughquag, LLC v. Hartford Ins. Co.*, No. 12 Civ. 7823, 2016 WL 6905945, at *2 (S.D.N.Y. Oct. 3, 2016). The Court, therefore, takes Appellants' efforts into account.

Accordingly, the duration of noncompliance factor weighs in favor of dismissal, but not heavily.

> B.    Notice

It is undisputed that Appellants were on notice that failure to comply with the November Order would result in dismissal. Appellant Mem. at 18. At the November Conference, Judge

Chapman made this clear, Appellants' principal acknowledged that he understood, and the December Order, drafted by the parties, memorialized that understanding. App. at 253–54; *cf. LeSane*, 239 F.3d at 210 (finding the notice factor weighed against dismissal where the notice was highly technical and unlikely to be understood by the *pro se* plaintiff). In fact, since March, Judge Chapman had been warning that a failure to secure a firm funding commitment could result in a dismissal for failure to prosecute. App. at 83. Moreover, Judge Chapman instructed Appellants how to avert dismissal: obtain a firm funding commitment, not a vague promise. *Id.* at 83–84, 253; *cf. Baptiste*, 768 F.3d at 218 (holding this factor weighed against dismissal where "the district court's orders did not provide clear guidance on how Baptiste could avoid dismissal").

It was, of course, within Appellants' rights to seek an extension of time. However, unlike in *Spencer*, where the plaintiff "reasonably believed" that he had complied with the order with his motion for assistance, *Spencer*, 139 F.3d at 113, Appellants knew their request for an extension did not comply. It was not the firm funding commitment that Judge Chapman had demanded, nor was it a request for assistance from the court in meeting the deadline. App. at 261–62. In fact, at the November Conference, Judge Chapman specifically anticipated that Appellants might submit documentation that would fall short of her requirements, and informed the parties that such documentation would result in dismissal. App. at 253. Moreover, Judge Chapman had stated that her patience regarding extensions was running thin, and that more extensions would not be granted. App. at 250.

Therefore, Appellants were on notice that a failure to comply with the March, November, and December Orders would result in dismissal, and this factor weighs in favor of dismissal.

C.      Prejudice to Defendants from Further Delay

"[P]rejudice to defendants resulting from unreasonable delay may be presumed."
*LeSane*, 239 F.3d at 210.  This presumption can be bolstered by evidence that the delay
prejudiced the defendants, for example, by "increas[ing] the litigation costs defendants had to
bear or reduc[ing] (perhaps due to decaying evidence) their likelihood of success on the merits."
*Id.*  However, "where delay is more moderate or excusable, the need to show actual prejudice is
proportionally greater."  *Drake*, 375 F.3d at 256 (internal quotation marks and citation omitted).

The delay from May until December increased Appellees' litigation costs, because they
were compelled to brief a motion to dismiss that went unanswered, attend conferences, and
undertake other day-to-day case management requirements.  Bank Mellon Mem. at 31–32;
Cohen Mem. at 27; *Peters v. Dep't of Corr. of New York City*, 306 F.R.D. 147, 149 (S.D.N.Y.
2015).  In addition, Appellees faced "the threat of a possible judgment hanging over them
indefinitely in a case that is not advancing toward a final resolution in any way."  *Anderson v.
Annucci*, No. 17 Civ. 7973, 2020 WL 1082393, at *2 (S.D.N.Y. Mar. 6, 2020) (internal quotation
marks and citation omitted); Bank Mellon Mem. at 31; Cohen Mem. at 26.  Judge Chapman was
cognizant of this prejudice, as she noted that, "these folks on the other side . . . are paying
lawyers to keep having to respond, who made a motion to dismiss that hasn't been responded to.
There's unfairness on that side, too."  App. at 244.

In addition, the Adversary Proceedings were filed four and two years, respectively,
before the December Order, based on conduct that took place mainly in 2010 and 2011.  App. at
144–153, 292.  Judge Chapman observed that the evidence was getting "stale."  *Id.* at 244.
Delay in prosecuting the Adversary Proceedings, therefore, "was likely to prejudice [Appellees']

ability to defend against this suit, as the salient events receded even farther into the past." *Ruzsa*, 520 F.3d at 177 (internal alterations and quotation marks omitted).

The Court, therefore, concludes that the prejudice from further delay factor weighs in favor of dismissal.

### D.      Balancing Due Process and the Court's Docket

The fourth factor requires a court to weigh the "need to manage efficiently a congested docket . . . against the plaintiff's right to due process." *Jackson v. City of New York*, 22 F.3d 71, 76 (2d Cir. 1994). "'A court must not let its zeal for a tidy calendar overcome its duty to do justice.'" *Outley v. City of New York*, 837 F.2d 587, 589 (2d Cir.1988) (internal alterations omitted) (quoting *Winston v. Prudential Lines, Inc*., 415 F.2d 619, 621 (2d Cir.1969), *cert. denied*, 397 U.S. 918 (1970)); *see also Lucas*, 84 F.3d at 535–36 ("There must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court."). A plaintiff's failure to prosecute is more likely to weigh for dismissal where it is "vexatious and burdensome" on the court's ability to manage its docket, as opposed to being merely "silent and unobtrusive." *LeSane*, 239 F.3d at 210. However, a court must also consider "fairness to other litigants, whether in the same case or merely in the same court (as competitors for scarce judicial resources)." *Chira v. Lockheed Aircraft Corp*., 634 F.2d 664, 668 (2d Cir. 1980). A court "cannot permit . . . any litigant[] to abuse its scarce resources while many others, desirous and deserving of relief, must patiently await their turn." *Yacub v. Coughlin*, 105 F.R.D. 152, 153 (S.D.N.Y. 1985); *see also Pichardo v. New York Univ*., No. 07 Civ. 6034, 2008 WL 4778351, at *5 (S.D.N.Y. Oct. 31, 2008).

On the one hand, on several occasions Judge Chapman noted her sympathy for Appellants and her desire to allow them a chance to be heard. App. at 79, 110, 242. In fact,

despite their failure to comply with the March Order as of the May Conference, she permitted Appellants to proceed with a motion to dismiss to ensure any meritorious claims would be heard. *Id.* at 110.  Even before the March Order, Appellants had been granted multiple extensions of time to effect service in order that their case go forward.  *Id.* at 278–81.  Moreover, the bankruptcy court held at least four conferences related to Appellants' failure to prosecute; the May Conference and the November Hearing directly addressed compliance with the March Order, allowing Appellants to be heard specifically on that issue.  *Martens v. Thomann*, 273 F.3d 159, 182 (2d Cir. 2001) (holding this factor weighed against dismissal where plaintiffs were not given an opportunity to be heard on dismissal for failure to prosecute, as opposed to other reasons for dismissal).

On the other hand, the Adversary Proceedings had existed for up to four years and had progressed no further than a motion to dismiss without a response, despite multiple filings and orders on the docket—filings the bankruptcy court was required to review.  *See* App. at 282; *Marco Polo Capital Mkts., LLC*, No. 15 Br. 1094.  In addition, the court had no guarantee that this case would not continue to sit mostly inactive on its docket for years to come:  when the court granted Appellants' request for letters rogatory on July 23, 2019, Appellants were not paying their counsel, and thus may not have had the funds to ensure that the letters rogatory would actually result in service of process on the remaining defendants.  App. at 282; *Shetiwy v. Midland Credit Mgmt.*, No. 12 Civ. 7068, 2016 WL 4030488, at *3 (S.D.N.Y. July 25, 2016) (finding the fourth factor weighed towards dismissal where the delays, "which will continue indefinitely if this case is not dismissed[,] cause[d] unnecessary congestion in the [c]ourt's docket"), *aff'd*, 706 F. App'x 30 (2d Cir. 2017).

This is not a case where a plaintiff "has made no effort to comply with the [c]ourt's directives or to prosecute his action." *Feurtado v. City of New York*, 225 F.R.D. 474, 480 (S.D.N.Y. 2004). Nor has the case languished without any activity. *Shetiwy*, 2016 WL 4030488, at *3. Still, the Adversary Proceedings had taken up a disproportionate amount of the court's time given their lack of progress. *Nolan v. Primagency, Inc.*, No. 07 Civ. 134, 2008 WL 1758644, at *4 (S.D.N.Y. Apr. 16, 2008), *aff'd*, 344 F. App'x 693 (2d Cir. 2009). Judge Chapman made continual efforts to allow Appellants to be heard on the merits, and balanced that against her need to manage her own docket. The Court concludes, therefore, that this factor too weighs in favor of dismissal. *See Paris v. Vacco*, 199 F.3d 1323, at *2 (2d Cir. 1999); *Shetiwy*, 2016 WL 4030488, at *3.

That the Stay Request was pending at the time of the dismissal does not alter this conclusion. Appellants complain that because the December Order did not contemplate further extensions, Judge Chapman could not have weighed Appellants' need for additional time to be heard on the merits. Appellant Mem. at 22. However, as indicated at the November Conference, Judge Chapman anticipated receiving documents in response to the November Order, considering their sufficiency, and then either permitting the filing of the opposition to the motion to dismiss or closing the cases—exactly what she did. App. at 253. There is no reason to presume Judge Chapman did not review the Stay Request before allowing the cases to be closed. Moreover, Judge Chapman had granted seven months of extensions to Appellants to obtain funding and, at the November Hearing, refused to grant another short extension. *Id*. at 252–53. Appellants were afforded ample time to be heard on the merits. When on December 18, 2019, Judge Chapman denied the final extension in the Stay Request by closing the cases, she had

carefully considered Appellants' due process rights and concluded, justifiably, that the balance had now tipped toward the efficient management of her docket.

      E.      Efficacy of Lesser Sanctions

Finally, the fifth factor requires the trial court to consider whether lesser sanctions than dismissal with prejudice would be effective. *Estate of Jaquez v. City of New York*, 541 F. App'x 76, 79 (2d Cir. 2013). The Second Circuit has suggested that a trial court not discussing lesser sanctions at all is sufficient to overturn the dismissal. *Id.*; *Mitchell v. Lyons Prof'l Servs., Inc.*, 708 F.3d 463, 468–69 (2d Cir. 2013).

Judge Chapman, though not explicitly discussing alternate sanctions, used the final extension granted at the November Hearing as a lesser sanction. App. at 249–50 ("I'm not going to grant the motion to dismiss [on default] . . . We need to be done. . . . we're going to come up with a path to be done. . . . [s]o . . . I'm going to grant the 30 days."); *see Peters-Turnbull v. Bd. of Educ. of City of New York*, No. 96 Civ. 4914, 1999 WL 959375, at *3 (S.D.N.Y. Oct. 20, 1999) ("[A] conditional order of dismissal, with a final date for compliance, is a lesser sanction which should be employed prior to dismissal."). After that conditional order failed to prompt Appellants' compliance, "dismissal would be an appropriate sanction. A court need not beg a party to comply with its orders." *Peters-Turnbull*, 1999 WL 959375, at *3.

Appellants suggest that lesser sanctions were available to Judge Chapman: she could have granted the Stay Request, required disclosure of more concrete facts regarding the Litigation Financers for *in camera* review, issued an order to show cause why the court should not dismiss for failure to prosecute, or dismissed without prejudice to allow Appellants to refile if and when they obtained funding and counsel. Appellant Mem. at 23–24. However, it was not an abuse of discretion for Judge Chapman to conclude none of those sanctions would have

17

sufficed.  Courts have suggested that an extension of time can act as a lesser sanction to dismissal.  *Spencer*, 139 F.3d at 114.  But Judge Chapman had already granted several extensions to the March Order at the May Conference and November Hearing, all of which had "been ineffective in motivating [Appellants] to comply with [the court's] orders."  *Samman v. Conyers*, 231 F.R.D. 163, 164 (S.D.N.Y. 2005).  She had also already demanded a *firm* commitment, which Appellants admittedly did not produce, *id.* at 250, 261–62; therefore *in camera* review of the encouraging details Appellants wished to offer would not have amounted to compliance.  Moreover, dismissal without prejudice would have risked a repeat of the May Conference—Appellants refiling with counsel but without a firm funding commitment, and then counsel withdrawing for nonpayment.  Finally, an order to show cause would, effectively, have given Appellants the extension they requested.  After granting multiple extensions, Judge Chapman was entitled to draw the line.  *Paris*, 199 F.3d 1323, at *2.

    In addition, this is not a case where a dismissal penalizes a client for their attorney's actions.  *Peart v. City of New York*, 992 F.2d 458, 462 (2d Cir. 1993) ("[D]ismissal is not favored because it imposes a penalty upon the client for her attorney's misconduct").  Rather, it was Appellants' failure to obtain financing and counsel that prevented the Adversary Proceedings from progressing, not any of their attorneys' actions.  *See Pichardo*, 2008 WL 4778351, at *3.

    Therefore, though Judge Chapman did not "expressly state[]" she was considering lesser sanctions, she "made clear that [she] regarded dismissal as a last resort, and cited the ineffectiveness of previous efforts to correct appellants' behavior," before concluding that dismissal, after one final opportunity for compliance, was the correct sanction.  *Storey v. O'Brien*, 482 F. App'x 647, 649 (2d Cir. 2012).  In light of her previous attempts to motivate

compliance, Judge Chapman did not abuse her discretion in reaching this conclusion.  *See*

*Feurtado*, 225 F.R.D. at 481.

## CONCLUSION

For the reasons stated above, the December 18, 2019 orders are AFFIRMED.  The Clerk

of Court is directed to close the case.

SO ORDERED.

Dated: February 19, 2021
       New York, New York

_____
ANALISA TORRES
United States District Judge

19